

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
01/07/2011

| | |
|---|---|
| IN RE: § | |
| WAVE ENERGY, INC.; aka WAVE § | CASE NO: 09-34577 |
| RESOURCES, INC. § | |
|    Debtor(s) § | |
| § | CHAPTER 11 |

### MEMORANDUM CONCERNING FINAL SUMMARY JUDGMENT ON TRUSTEE'S OBJECTION TO CLAIM OF STOKES AND SPIEHLER ONSHORE, INC. (DOC # 334)

    Stokes and Spiehler Onshore, Inc. ("S&S") filed a proof of claim in this bankruptcy case asserting that it holds a secured claim against Debtor for goods sold and services provided to the DeGarza # 2 & 3 gas wells (the "Gas Wells") in Zapata County, Texas. The chapter 11 Trustee (now the Plan Trustee) concedes that the claim should be allowed as an unsecured claim, but denies that S&S holds a perfected security interest. Both S&S and the Trustee filed motions for summary judgment. For reasons set forth below, and by separate order issued this date, the Court concludes that the S&S claim is an unsecured claim and sustains the Trustee's objection.

### FACTS

    The parties agree on the facts.

    Debtor (to whose rights the Plan Trustee succeeded through complex procedures not important here)[1] owned working interests in the DeGarza # 2 & 3 gas wells (the "Gas Wells") in Zapata County, Texas. A joint operating agreement (JOA) among the Working Interest Owners designated James Whitson ("Whitson")[2] to drill and to operate the well. The JOA, in the usual and standard contract terms, required Whitson to keep the wells lien-free and gave Whitson a lien on the wells and production to secure the Working Interest Owners obligations to Whitson. The lien granted by the JOA was timely and properly perfected.

    S&S performed engineering services for Whitson and charged him $150,026.54. Whitson never paid the bill. There is no dispute about the amount of that debt or about the fact that Whitson never paid any of the bill.

---

[1] This bankruptcy case and related cases involve Ponzi schemes to drill gas wells in South Texas. When the scheme reached its inevitable end, documentation and records were a mess. Involuntary bankruptcy petitions commenced a number of bankruptcy cases attempting to resolve rights in the few valuable wells. An interpleader proceeding trapped substantial funds that were divided among competing claims by a mediated settlement. S&S opted out of the settlement and eventually the dispute over S&S's secured claim was postured in this contested matter to which both parties filed motions for summary judgment.

[2] An involuntary bankruptcy petition was also filed against Whitson and an order for relief was entered.

In an effort to take advantage of TEXAS PROPERTY CODE § 56.003(a) (the Texas Mineral Lien Law) S&S timely and properly recorded a document entitled "Affidavit Claiming Lien on Mineral Property".

The crux of the dispute between the Trustee and S&S is whether the document satisfies the statutory requirement applicable to affidavits. There is no dispute about the formal recording requirements, description of the property, *etc.* The portions of the document that are in dispute are the first sentence of the document and the *jurat.*:

The first sentence of the document reads" "Affiant, Bruce M. Jordan, on oath swears that the following statements are true and are within his personal knowledge: …"

At the end of the document appears the following statement of the notary:

STATE OF LOUISIANA
PARISH OF LAFAYETTE

This instrument was acknowledged before me on May 21st, 2009, by Bruce M. Jordan, as President of Stokes and Spiehler Onshore, Inc., a Louisiana corporation, on behalf of said corporation.

/s/
Notary Public in and for the
State of Louisiana

RAYMOND A. BEHT
NOTARY PUBLIC
STATE OF LOUISIANA

Attached to S&S's summary judgment evidence is Mr. Beht's certification that Mr. Jordan actually appeared before Mr. Beht and "swore on his oath to the Affidavit Claiming Lien on Mineral Property …"

There is no dispute that Mr. Beht is a Louisiana attorney and notary public and there is no summary judgment evidence contrary to his certification.

ISSUES IN DISPUTE

A. Pleadings Dispute.

The Trustee contends that S&S initially only asserted a lien by virtue of the recordation of the Jordan affidavit, and the subsequent lien claim allegedly based on the JOA should be disregarded. The Trustee's procedural objection is denied. The Court will consider S&S's other contentions.

First, S&S is arguably correct that the claims have been asserted long enough, and vigorously enough, to give the Trustee adequate notice of the claim and an opportunity to respond.  Second, the provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure (FRBP) are very liberal regarding amendments to proofs of claim.  There is no need to allow amendment and then to posture this dispute again for decision.  The matter is ripe.

B.  Substantive Issues in Dispute

The following issues are in dispute:

1. Whether the document that S&S recorded satisfies the Texas requirements of form to perfect a lien;
2. Whether S&S is entitled to a lien by virtue of the recordation of the JOA; and
3. Whether S&S is entitled to interest and attorneys' fees.

CONCLUSIONS OF LAW

A.  Whether the document that S&S recorded satisfies the Texas requirements of form to perfect a lien.

Both parties have discussed the requirements in their memoranda.  The essence of the dispute is whether the document meets the formal requirements of an affidavit.

> …[T]o secure a lien against mineral property, a lien claimant must file an affidavit with the county clerk of the county in which the property is located. TEX. PROP.CODE ANN. at § 56.021(a). An affidavit is statutorily defined in Texas as a "statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX. GOV'T CODE ANN. § 312.011(1). The term "sworn" includes that which is "affirmed." *Id.* at § 312.011(16). This means an affidavit must be sworn to or affirmed before an authorized third party, who must certify that the affiant so swore to or affirmed the statement at issue. *Guinn v. Bosque County,* 58 S.W.3d 194, 198 (Tex.App.-Waco, 2001). This certification is known as the "jurat." *Id.* Without a jurat, a statement is not an "affidavit." *Id.* A mere acknowledgment that a document was executed for a particular purpose is insufficient. *Blanco,* 788 F.3d at 792 (citing *Sugarland Business Center, Ltd. v. Norman,* 624 S.W.2d 639, 641 (Tex.App.-Houston [14th Dist] 1981, no writ)); *Crockett v. Sampson,* 439 S.W.3d 355 (Tex.App.-Austin, 1969).  [*In re Reichman Petroleum Corp.* 2009 WL 915280 (S.D. Tx. 2009) at *8.]

Mr. Bro's recorded document in the *Reichman* case is remarkably similar to Mr. Jordan's document in this case.  In *Reichman*, the document began with Mr. Bro's statement that he "affirmed" the facts in the document.  As noted above, a proper affirmation is equivalent to a

sworn statement.  The *Reichman* court held that the notary's certification of the document was not adequate, and therefore the lien was not properly perfected:

> The instrument concludes with a Notary Public's certification that Mr. Bro "personally appeared" before her and "acknowledged" to her that the document was executed on behalf of K-3. The Notary Public did not certify that Mr. Bro swore to or affirmed the affidavit before her. Reading Mr. Bro's statement broadly, the Court finds the instrument filed by K-3 does not contain a sufficient jurat, and is therefore not a valid affidavit. *See Crockett,* 439 S.W.3d at 360.

The Court of Appeals for the Fifth Circuit has also ruled on this issue:

> … [A]n affidavit must contain a notary's statement that the affiant was duly sworn; a mere acknowledgement by a notary that a document was executed for a particular purpose is insufficient. [*Blanco v. Porras*, 897 F.2d 788, 792 (5th Cir. 1990).]

Having stated that "a mere acknowledgement" is insufficient, one might expect *Blanco* to hold that the document in that case was inadequate.  But the Fifth Circuit actually held that the *Blanco* document satisfied the Texas requirements.  What validated the affidavit in *Blanco* was the first sentence in the document.  In *Blanco*, the affidavit opened with the words "…'[b]efore me, the undersigned authority, personally appeared ZANE BLANTON, president of Blanco, Inc., ... who, upon his oath deposed and stated…' ".

S&S argues that *Blanco* stands for the proposition that it does not matter whether the notary's certification is at the beginning of the document or at the end of the document.  S&S is correct on that narrow point; *Blanco* so holds.

But while they are similar, the opening statement in the *Blanco* document (a valid affidavit) and the opening statement in the *Jordan* document are materially different.  The opening statement in *Blanco* is a statement <u>by the notary</u>, not a statement by the appearer.  The opening sentence in *Blanco*[3] is a statement <u>by the notary</u> that the appearer personally appeared and spoke on oath.

---

[3] As well as the opening sentence in a number of affidavits found by the *Reichman* court to be valid.

In the *Jordan* document at issue here, the opening statement is

> Affiant, Bruce M. Jordan, on oath swears

Compare that with the *Blanco* statement:

> [b]efore me, the undersigned authority, personally appeared ZANE BLANTON, president of Blanco, Inc., ... who, upon his oath deposed and stated…

In *Blanco* the notary made two statements. The first statement at the beginning of the document certified that Mr. Blanton appeared "and upon his oath deposed and stated". Aat the end of the document the notary stated that Mr. Blanton acknowledged his statement. The second statement was not necessary, and the Fifth Circuit held that it was ineffective.

In the Jordan document, the notary made only one statement: that Mr. Jordan acknowledged a statement that included the words "on oath." The notary in the Jordan document does not certify that Mr. Jordan spoke on oath, the notary certifies only that Mr. Jordan acknowledged a statement that included those words. Oaths can only be administered and certified by persons authorized by law to do so. *Blanco* and *Reichman* clearly hold that the notary must certify that the statement was made while under oath. Mr. Jordan was simply not authorized by law to certify that he spoke on oath and the fact that he acknowledged his statement before a notary was ineffective.

Therefore, reconciling *Reichman* and *Blanco* and applying that reconciliation, the Court concludes that the document recorded by S&S was not properly certified, does not meet the requirements of an affidavit, and does not perfect a lien.

B.   Whether S&S is entitled to a lien by virtue of the recordation of the JOA

The JOA requires Whitson to keep the property free of liens. The JOA grants Whitson a lien for his claims. S&S is not a party to the JOA and there is no grant of a lien rights to S&S. Whitson may or may not have lien rights against the property. But even if he did (or does), there is no document that gives S&S a lien on Whitson's secured claim.

There is simply no summary judgment evidence evidencing the grant or the perfection of lien in favor of S&S.

C.   Whether S&S is entitled to interest and attorneys' fees

S&S's claim is based on S&S's rights to a lien. Because the Court has concluded that S&S has no lien, S&S has no rights to interest and attorneys' fees,

## CONCLUSION

By separate written order, S&S's claim is denied as a secured claim and allowed as an unsecured claim.

SIGNED 01/07/2011.

*Wesley W. Steen*
Wesley W. Steen
United States Bankruptcy Judge